IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | CHRISTOPHER VICKMAN, | ) |
| | | ) |
| | Plaintiff, | ) |
| | | )   Civil Action No. CIV-18-132-HE |
| v. | | ) |
| | | ) |
| (1) | AMITY CARE, L.L.C. d/b/a | ) |
| | GRACE LIVING CENTERS, | ) |
| (2) | GRACE LIVING CENTERS d/b/a | ) |
| | SENIOR VILLAGE, | ) |
| | | ) |
| | Defendants. | ) |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff, CHRISTOPHER VICKMAN, files this action against Defendants, AMITY CARE, L.L.C. d/b/a GRACE LIVING CENTERS and GRACE LIVING CENTERS d/b/a SENIOR VILLAGE, and by way of complaint against Defendants alleges the following:

**I.  Nature of Action**

1.1    This jury action seeks redress for Defendants' violation of the laws of the United States in connection with the unlawful employment practices on the basis of disability, genetic information and retaliation.  The action specifically seeks to enforce rights created under the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101 *et. seq.,* Oklahoma's Anti-discrimination Act ("OADA") and Genetic Information Non-Discrimination Act ("GINA"), 42 U.S.C. § 2000ff *et. s*eq.  As redress for Defendants' violation of the ADA, OADA and GINA Plaintiff prays for and demands declaratory, legal

1

and equitable relief, including back pay, reinstatement or, in the alternative, front pay, punitive and/or liquidated damages, damages for emotional distress and attorney fees and costs.

## II.  Jurisdiction and Venue

2.1     Jurisdiction over the federal claims are vested in this Court under 28 U.S.C. § 1331. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), and by Section 207(b) of the Genetic Information Non-Discrimination Act of 2008, 42 U.S.C. § 2000ff-6(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  The state law claims arise out of the same core of facts and jurisdiction over them is vested under 28 U.S.C. § 1367(c).

2.2     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because all or a substantial part of the events or omissions giving rise to the claims set forth herein occurred within the judicial district of this Court, and because Defendants reside within the judicial district of this Court.

2.3     At all relevant times, Defendants have continually been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5) and Section 101(7) of the ADA, 42 U.S.C. § 12111(7) and under § 201(2)(B)(i) of the GINA, 42 U.S.C. § 2000ff(2)(B)(i), all of which incorporate by reference Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

2.4     At all relevant times, Defendants have continuously been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

2.5     All conditions precedent to Plaintiff's entitlement to relief in this action have been fulfilled and satisfied.  Plaintiff filed a charge of disability discrimination with the U.S. Equal Employment Opportunity Commission against Defendants.   On November 14, 2017 the EEOC issued to Plaintiff a Notice of Right to Sue against and this suit is instituted within the 90-day deadline contained within the notice.

### III.    Parties

3.1     Plaintiff is a male citizen of the United States and a resident of McClain County, Oklahoma.

3.2     Defendant Amity Care, L.L.C. d/b/a Grace Living Centers is a domestic limited liability company registered to do business in the State of Oklahoma.  Process may be served upon its duly authorized agent: Don Greiner, 4350 Will Rogers Parkway, Suite 300, Oklahoma City, OK  73108.

3.3     Based upon information and belief Defendant Grace Living Centers is doing business as Senior Village and is not registered to do business in the State of Oklahoma.  Process may be served upon its managing agent at its operational place of business:  1104 N. Madison Ave., Blanchard, OK  73010.

3.4     Based upon information and belief, Defendant Amity Care, L.L.C. d/b/a Grace Living Centers owns and operates Defendant Senior Village in Blanchard, OK. The companies are related companies under common ownership.

## IV.      Background Facts

4.1      On or about September 21, 2015 Senior Village [predecessor] hired Plaintiff for the full-time position of Maintenance Coordinator.  The facility is located in Blanchard, OK and has approximately 52 beds providing long-term nursing care.  Plaintiff had always met or exceeded his performance standards and never disciplined.

4.2      In early September 2017, Troy Fogle, Administrator, advised Plaintiff Defendants would be assuming operations of the facility on or about October 1, 2017 and that he expected all positions, including Plaintiff to be retained by Defendants.

4.3      Later in September 2017 and before assuming operations of the facility, Defendants began to transition as new owners of the facility.   Plaintiff learned that Defendants had been seeking from staff information concerning past medical and/or hereditary conditions as a condition to employment. Plaintiff contacted the U.S. Equal Employment Opportunity Commission to determine if he was required to provide past medical and/or hereditary information to Defendants as a conditional offer of employment. The EEOC advised Plaintiff that the information sought would be prohibited inquiry under certain statutes.

4.4      Later in September 2017 Plaintiff was instructed to pick up from Todd (last name unknown), representative of Defendants, a packet to review, complete and return before being officially hired or retained.     That day, Plaintiff picked up the packet from Todd and asked if he was being retained.    Todd instructed Plaintiff to fill it out and return.   Plaintiff

4

told Todd of his prior communication with the EEOC prohibiting disclosure of prior medical or hereditary conditions as part of a conditional job offer.   Plaintiff offered to complete all sections of the packet with an unconditional job offer.

4.5     The packet contained, among other things, a Conditional Job Offer notice, "Post Employment Medical Questionnaire", "Employee Physical Evaluation" and authorization for TB testing.   The medical questionnaire sought Plaintiff to check "yes" or "no" on a list of approximately 46 health conditions, including but not limited to, heart trouble, high blood pressure, nervous breakdown, epilepsy, diabetes and cancer.   The questionnaire further directed Plaintiff to write in all "significant health problems".   The Employee Physical Evaluation form directed Plaintiff to check "yes" or "no" if "normal" to a list of approximately 20 body parts, including thyroid, heart, lungs, neurological, chest, vessels and glands.   The forms further directed Plaintiff to describe any "abnormality/deviation" for each category.

4.6     Defendants requested and expected Plaintiff, and the other applicants given conditional offers of employment, to complete all forms and undergo a physical examination. Defendants would then screen each applicant before being officially hired.

4.7     Plaintiff then filled out the contents of the packet, leaving medical history inquiry sections blank, and personally delivered to Todd.   Later that day, Todd instructed Plaintiff to complete the entire packet.   Plaintiff reminded Todd of his communication with and opinion from the EEOC that those sections left blank violated the law. Todd then conditioned his employment/retention upon completion of the entire application.   Plaintiff

5

advised Todd that he was and has been able to perform all job functions for over two years and requested a copy of his job description.

4.8     Later that day, Plaintiff hand-delivered to Todd a copy of his job description with his notation that he can perform the job functions.  He further told Todd again that he would complete the entire application packet if he was going to be hired/retained.

4.9     Plaintiff never received an interview from Defendants and continued to work in his position.   On or about September 26, Defendants began conducting the physical examinations of staff, except Plaintiff.

4.10    When Plaintiff called Todd seeking work instructions, Plaintiff was told that he would not be hired/retained by Defendants.   Plaintiff again advised him that he would complete all sections with a job offer.

4.11    The next day, Plaintiff was able to speak to Will Griffin, Defendants' representative, by telephone.  Mr. Griffin told him that he was not selected for hire/retention because Plaintiff had contacted the EEOC regarding violations within their application/questionnaire and considered Plaintiff a "threatening" employee.

4.12    Based upon  information and belief, all former staff of Senior Village were retained by Defendants, except two employees due to health concerns detected in the screening process.  Troy Fogle was also retained as Administrator by Defendants.

4.13     Plaintiff was not hired or retained by Defendants.

## COUNT I:  ADA and Oklahoma's Anti-Discrimination Act

## [Discrimination and Retaliation]

5.1     Plaintiff incorporates and realleges, in full, paragraphs 1.1 through 4.13 of this Original Complaint.

5.2     Plaintiff was "regarded as having such an impairment" by Defendants within the meaning of 42 U.S.C. § 12102.(2)(C) and/or Plaintiff has a "record of such an impairment" within the meaning of (2)(B).

5.3     Defendants willfully, knowingly, and intentionally discriminated against Plaintiff on the basis of a perceived disability in the terms or conditions of his employment by:    Making an offer of employment conditioned upon passing an examination and completing medical history questionnaires; Refusing to offer employment or retention employment to Plaintiff after refusal to undergo a physical examination and complete medical questionnaires; Presuming Plaintiff, based upon his refusal to complete the medical questionnaires or undergo physical examination, was disabled.   By engaging in such conduct, Defendants violated § 12112(a) and Oklahoma's Anti-Discrimination Act, which makes it an unlawful employment practice for an employer to discriminate against any person with respect to hiring, discharge and other terms, conditions, and privileges of employment because of being regarded as disabled.

5.4     Defendants willfully, knowingly, and intentionally retaliated against Plaintiff in the terms or conditions of his employment by his opposition and reporting of discriminatory conduct in his non-retention/hire by:  His prior communications with and

7

reporting to the EEOC of unlawful medical history questionnaires and examination as condition of employment; The opinion from the EEOC that the medical history questionnaires and examination as condition of employment violated applicable statutes; Plaintiff's refusal to provide medical information or undergo examination(s) prohibited by law; Plaintiff's reporting to Defendants of prior reporting to the EEOC of Defendants violations of the ADA in the application and screening process of Plaintiff and candidates.   Plaintiff held the good faith belief that he was opposing and/or reporting discriminatory employment practices in his refusal to provide all information requested by Defendants and in his reporting to the EEOC of discriminatory practices in application and screening of Plaintiff, and other candidates.   By Plaintiff holding the good faith belief that he was opposing discriminatory employment practices, complaining of such conduct to the EEOC and to Defendants, Plaintiff was opposing discrimination made unlawful by the ADA and OADA.  Plaintiff was therefore engaged in activity protected under the ADA and OADA.

5.5    Defendants willfully, knowingly, and intentionally retaliated against Plaintiff for opposing and reporting discriminatory employment practices in the terms or conditions of his employment by (a) failing to consider Plaintiff as a candidate for retention, and (b) failing or refusing to hire or retain Plaintiff's position upon assumption of operations.

5.6    Plaintiff's opposition to and reporting of discriminatory employment practices and/or perceived disability was a motivating factor in his non-retention/hire. Defendants willfully, knowingly and intentionally retaliated or discriminated against

Plaintiff on the basis of his opposition to and reporting of discriminatory employment practices and/or discriminated against Plaintiff from a perceived disability.

5.7    As a direct and proximate result of Defendants' violation of the ADA and Oklahoma's Anti-Discrimination Act, Plaintiff has been damaged by the loss of his employment with Defendant and the loss of compensation, including salary and employee benefits, he would have received as an employee of Defendants had he not been discharged in violation of the ADA and Oklahoma's Anti-Discrimination Act.

5.8    As a direct and proximate result of Defendants' actions as alleged under this Count, Plaintiff has suffered nonpecuniary losses, including emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

5.9    Defendants engaged in the conduct alleged herein with malice and reckless indifference to the protected rights of Plaintiff.

5.10    As a direct and proximate cause of the violations of the ADA and Oklahoma's Anti-Discrimination Act as alleged under this Count, Plaintiff has also suffered other pecuniary losses, the type and amount of which will be established at the trial of this cause.

## COUNT II:  GINA

### [Discrimination and Retaliation]

6.1    Plaintiff incorporates and realleges, in full, paragraphs 1.1 through 5.10 of this Original Complaint.

6.2    Defendants engaged in unlawful employment practices at its Blanchard, Oklahoma facility in violation of section 202(b) of Title II of the GINA, 42 U.S.C. §

9

2000ff-1(b), in that Defendants requested and required Plaintiff, and other applicants for employment, to indicate genetic information in the form of past medical history and undergo examinations conducted by Defendants given conditional offers of employment. Plaintiff, and other applicants, would not be formally hired until Defendants had received and reviewed all completed questionnaires of medical history and examination results.

6.3     Defendants engaged in unlawful employment practices at its Blanchard, Oklahoma facility in violation of Title II of the GINA in that Defendants willfully, knowingly, and intentionally retaliated against Plaintiff for opposing and reporting discriminatory employment practices to the EEOC and internally in the terms or conditions of his employment by (a) failing to consider Plaintiff as an applicant, and (b) failing or refusing to hire or retain Plaintiff's position upon assumption of operations.

6.4     The effect of the employment practices has deprived Plaintiff of equal employment opportunities and otherwise adversely affect his status as applicant or employee due to genetic and/or medical history information.

6.5     The unlawful employment practices complained of work and are intentional.

6.6     The unlawful employment practices complained were and are done with malice and reckless disregard for the federally protected rights of plaintiff.

### Prayer for Relief

WHEREFORE, PLAINTIFF prays that this Court:

1.      A judgment that Defendants have engaged in all of the conduct alleged in this Original Complaint, and that Defendants have, by engaging in such conduct, violated the ADA, OADA and GINA.

2.      An injunction permanently enjoining Defendants from engaging in the future the discriminatory employment practices alleged in this Original Complaint.

3.      A judgment against Defendants awarding Plaintiff an amount equal to the lost wages and employment benefits he would have received had he not been terminated or retaliated by Defendants in violation of the ADA, OADA and GINA.

4.      An order reinstating Plaintiff to the position, seniority and level of compensation, including salary, bonuses and benefits, he would have enjoyed had he not been discriminated or retaliated by Defendants in violation of the ADA, OADA and GINA, or, in the alternative, a judgment awarding Plaintiff an amount equal to the front pay, including salary, bonuses and benefits, he would have received, from the date of judgment through the date he would have retired or resigned from employment at Defendants.

5.      A judgment against Defendants awarding Plaintiff compensatory damages

6.      A judgment against Defendants awarding Plaintiff exemplary damages to punish and make an example of Defendants for their unlawful conduct.

7.      A judgment against Defendants awarding Plaintiff liquidated damages for the wage and/or benefit loss arising from the termination.

11

8.      A judgment against Defendants awarding Plaintiff compensation for past and future nonpecuniary losses, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life and humiliation, in amounts to be determined at trial.

9.      A judgment against Defendants awarding Plaintiff an amount equal to the costs of bringing this action, including a reasonable attorney fee.

10.     A judgment awarding Plaintiff such other legal and equitable relief as may be appropriate, including prejudgment and postjudgment interest.

Respectfully submitted,


S/Jeff Taylor
Jeff A. Taylor
State Bar No. 17210
The Offices at Deep Fork Creek
5613 N. Classen Blvd.
Oklahoma City, OK  73118
Telephone:   (405) 286-1600
Facsimile:    (405) 842-6132

ATTORNEYS FOR PLAINTIFF


**DEMAND FOR JURY TRIAL**

In accordance with Fed.R.Civ.P. 38(b), Plaintiff demands a jury trial of all of his claims in this action.

s/ Jeff A. Taylor
Jeff A. Taylor